**Burton W. KANTER, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE et al., Defendants (two cases).**

**Alan H. HAMMERMAN, Plaintiff,**

v.

**DEPARTMENT OF JUSTICE et al., Defendants.**

**Roger S. BASKES, Plaintiff,**

v.

**DEPARTMENT OF JUSTICE et al., Defendants.**

**Burton W. KANTER, Plaintiff,**

v.

**DEPARTMENT OF JUSTICE et al., Defendants.**

Nos. 76 C 3384, 76 C 3515, 76 C 4264, 76 C 4265 and 76 C 4267.

United States District Court, N. D. Illinois, E. D.

May 27, 1977.

Randall G. Dick, San Francisco, Cal., Levenfeld, Kanter, Baskes & Lippitz, Harvey N. Silets and Theodore A. Sinars, Harris, Burman, & Silets, Chicago, Ill., for plaintiffs.

John J. McCarthy, Donald J. Gavin and Margaret M. McMahon, Attys., Tax Div., U. S. Dept. of Justice, Wash., D.C., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

### I. Introduction

These five actions under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, have been consolidated by the court for unified consideration. They are among a series of eight FOIA actions brought in this District by the defendants in the criminal prosecution, *United States v. Baskes, et al.*, 433 F.Supp. 799, which is also pending before this court.[1]

At dispute are various documents and records in the files of the Internal Revenue Service and the Department of Justice which these agencies contend would give the plaintiffs "access to virtually the entire Government's case against them."

At issue in case No. 76 C 3384 are certain deletions made from Project Haven[2] Status Reports which the government contends were inadvertently released to the plaintiff in edited form. The plaintiff appears particularly concerned to discover which of the deletions refer to himself or his law firm.

Case No. 76 C 3515 seeks release of all records relating to a series of specified meetings held in Reno, Nevada, and San

---

1. There are also five other FOIA cases pending in the District Court for the District of Columbia which are also related to the same criminal prosecution.

2. Project Haven is a name given to the controversial I.R.S. investigation of the use of offshore trusts for tax evasion purposes.

Francisco, California, during the period extending from March, 1974, to September, 1974. These meetings apparently dealt with the transaction underlying the indictment in *U. S. v. Baskes, supra.*

The three remaining suits—Nos. 76 C 4264, 76 C 4265 and 76 C 4267—seek access to all Department of Justice records "indexed or maintained" under the plaintiffs' names, and "all documents returnable by a search for documents" containing plaintiffs' names.

The government agencies maintain that they have expended substantial time and effort in examining their files pursuant to these FOIA requests. They state that they have turned over at least 187 documents to the plaintiffs,[3] and now maintain that the remaining requested materials are exempt under the Act from disclosure.

The defendant agencies have moved for summary judgment on the grounds that they have now turned over all non-exempt materials covered by these requests. The parties have extensively briefed the defendants' asserted primary defense to further disclosure, Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).

The Freedom of Information Act contains at § 552(b) a series of enumerated exemptions. Although the government contends that other exemptions are also applicable to the records at issue in these cases, it has chosen to initially assert the applicability of 7(A)[4] which bars disclosure of

"investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings."

The government's position is that exemption 7(A) entitles it to "protect for a temporary time until its enforcement proceedings and investigations are closed" the requested documents in dispute.

## II. The Policy of the Freedom of Information Act: The Limited Scope of Exemptions

The Supreme Court in *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), endorsed the statement of the Second Circuit in that same case, 495 F.2d 261, 263 (2d Cir. 1974), that the Freedom of Information Act was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." The Act was "conceived in an effort to permit access by the citizenry to most forms of government records." *Vaughn v. Rosen,* 157 U.S.App. D.C. 340, 484 F.2d 820, 823 (1973).

FOIA was therefore conceived in a spirit of skepticism towards facile claims of the need for complete governmental secrecy. Indeed, Congress has seen fit to pass liberalizing amendments when it appeared that the government was using the literal language of the Act to, in the words of Senator Hart, "stonewall [in a manner] not consistent with the intent of Congress when it passed [the Act] in 1966." *Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts and Other Documents,* (1975) ("Sourcebook") pp. 332–333.[5]

The Supreme Court has accordingly recognized that the "exemptions are explicitly

3. The government has also filed an index to the records withheld in case 76 C 3515; although the plaintiffs concede that this index reveals that certain records are in fact exempt, they maintain that the index is insufficient.

4. The government's brief indicates that its claim of exemption for "investigatory records" encompasses other aspects of exemption 7 which also applies where disclosure would disclose the identity of a confidential source [7(D)], disclose investigative techniques and procedures [7(E)], or endanger the life or safety of law enforcement personnel [7(F)].

5. For example, Exemption 7 originally applied to "investigatory *files* compiled for law enforcement purposes." Congress was concerned that the literal language of the statute was being utilized to bury documents solely on the grounds that they were located in "investigatory files", despite the current staleness of the documents for law enforcement purposes. Accordingly, exemption 7 was amended to substitute "records" for "files" and to specify the circumstances in which such records were entitled to an exemption.

made exclusive [by] 5 U.S.C. § 552(c)", *EPA v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973), and that these exemptions "must be narrowly construed", *Dept. of Air Force v. Rose, supra*, 425 U.S. at 361, 96 S.Ct. [1592] at 1599. The Court stressed that "these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."

Consequently, exemption 7

"permit[s] an agency to withhold investigatory records compiled for law enforcement purposes *only to the extent that* the *production* of such records *would interfere with enforcement proceedings*, deprive a person of a right to a fair trial or an impartial adjudication, constitute a clearly unwarranted invasion of personal privacy, disclose the identity of an informer, or disclose investigative techniques and procedures." Sourcebook at 229 (Joint Explanatory Statement of the Committee of Conference) (emphasis added).

■ Under FOIA, the agency which seeks to deny disclosure has the burden "to prove *de novo* in trial court that the information sought fits under one of the exemptions." *Vaughn v. Rosen, supra*, 484 F.2d at 823; *Title Guarantee Co. v. NLRB*, 534 F.2d 484 (2d Cir. 1976); *New England Medical Center Hospital v. NLRB*, 548 F.2d 377, 382 (1st Cir. 1976); *Seafarers International Union v. Baldwin*, 508 F.2d 125 (5th Cir. 1975). The statute specifically states that "the burden is on the agency to sustain its action [in withholding materials]", § 552(a)(4)(B).

■ As revealed by the legislative history related in footnote 5, the availability of an exemption is not to be determined by the manner in which a document is labeled or filed by the agency. It is insufficient baldly to assert that the document is part of an "investigatory" or "open investigatory" file. *New England Medical Center Hospital v. NLRB, supra*, 548 F.2d at 386.

Similarly, the availability of an exemption is unaffected by the identity of the plaintiff in a FOIA action. A party's

"rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in [withheld materials] greater than that shared by the average member of the public. The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants."

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 fn. 10, 95 S.Ct. 1504, 1513, 44 L.Ed.2d 29 (1975); *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1874); *U. S. v. Murdock*, 548 F.2d 599 (5th Cir. 1977).

■ Congress has indeed eliminated the "need to know" requirement for FOIA plaintiffs; they need not justify their motivation for seeking the documents. *EPA v. Mink, supra*, 410 U.S. at 79, 92, 93 S.Ct. 827.

■ Except as circumstances may compel the utilization of one of the exemptions, Freedom of Information cases are to be treated as independent causes operating on a different plane from other litigation.[6] For this reason courts have not allowed the staying or enjoining of civil or criminal actions in which FOIA requested information might prove useful. *U. S. v. Murdock, supra; Fruehauf v. Thornton*, 507 F.2d 1253 (6th Cir. 1974); *Electri-flex Co. v. NLRB*, 412 F.Supp. 698 (N.D.Ill.1976).[7] Parties in other litigation are essentially only *entitled* to that discovery provided by the rules applying to their suit.

The applicability of an exemption therefore is not to be determined on the basis of the identity of the plaintiff, the label given

---

**6.** The court in *Verrazzano Trading Corp. v. U. S.*, 349 F.Supp. 1401 (Cust. Ct. 1972), noted that a FOIA action requires a federal complaint. Similarly this court refused in *Lincoln National Bank v. Lampe*, 421 F.Supp. 346 (N.D. Ill.1976), to accord priority to a party's FOIA complaint solely on the basis that it had previously filed another civil suit in which the requested materials would prove useful.

**7.** *But see, Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974).

to the file or document, nor the isolated fact that the information may aid a party in other litigation.[8] The sole appropriate analysis is a consideration of "whether the exemption applies to the documents in question", *Bryant v. IRS,* 76–2 USTC ¶ 9613, No. 76–31 (D.Me. 7/21/76).

■ This involves consideration of whether production of the specific materials would actually result in the injuries contemplated by the exemption. *NLRB v. Sears,* 421 U.S. at 164, 95 S.Ct. 1504 (dictum), citing language found at Sourcebook p. 229. As the court stated in *New England Medical Center, supra,* 548 F.2d at 382 "[t]he Government can now justify non-disclosure only by showing 'that disclosure would interfere with enforcement procedures.' 120 Cong.Rec. 17033 (1974) (remarks of Sen. Hart)." If there is a likelihood of interference the exemption applies and will justify denial of release, not only to the objects of the investigation and any pending or prospective enforcement actions, but to third parties as well. *National Public Radio v. Griffin B. Bell,* 431 F.Supp. 509 (D.C.C. 1977). But first proof must be made of the basis for anticipating such interference.

*III. The Relationship of Exemption 7(A) to Discovery in a Pending or Prospective Enforcement Action*

■ As noted, *supra* at fn. 7, the existence of a pending enforcement action against these plaintiffs, and of prospective indictments against their clients and associates, *is* relevant to the appropriateness of exemption 7(A) to these requests. The government maintains that the plaintiffs are using their FOIA suits as a means of circumventing the restrictions on discovery in the criminal suit. They have made the strongly disputed assertion that case law has established that FOIA "is not to be used by any person for discovery purposes".

The government's position apparently refers to the statement of the Supreme Court at fn. 10 to *NLRB v. Sears,* cited *supra,* that FOIA "is fundamentally designed to inform the public about agency action and not to benefit private litigants." The Court has also commented in *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974), that "[d]iscovery for litigation purposes is not an expressly indicated purpose of the Act."

Various other cases, primarily NLRB enforcement actions, have reiterated the belief that FOIA "was not intended to be used as a discovery tool", *Electri-flex Co. v. NLRB, supra,* 412 F.Supp. at 702; *Title Guarantee Co. v. NLRB, supra; Roger J. Au & Son, Inc. v. NLRB,* 538 F.2d 80 (3d Cir. 1976); *New England Medical Center Hospital v. NLRB, supra; Fruehauf Corp. v. Thornton, supra; U. S. v. Murdock, supra; Verrazzano Trading Corp. v. U. S., supra; Williams v. IRS,* 345 F.Supp. 591 (D.Del.1972).

In analyzing exemption 7(A) the courts have been obligated to consider the legislative history in order to ascertain the intent of Congress in its restructuring of the FOIA exemptions.

Probably the leading analysis is that made by Judge Oakes in *Title Guarantee Co. v. NLRB, supra,* which is cited by most subsequent cases. Judge Oakes noted that FOIA requests in *Title Guarantee* would go beyond that permitted by NLRB procedures, as endorsed by the courts and permitted by statute. He was persuaded that FOIA should not be viewed as expanding a litigant's discovery rights "[a]bsent a clearer indication of contrary congressional intent." 534 F.2d at 491. In an often cited passage, he stated

"We cannot envisage that Congress intended to overrule the line of cases deal-

---

**8.** Of course, the manner in which the information may affect other litigation goes to the very heart of exemption 7(A). As the First Circuit noted in *New England Medical Center, supra,* 548 F.2d at 383, fn. 7, references to the other enforcement proceedings involving the FOIA plaintiff "are necessary to point up the precise nature of the threat to enforcement proceedings that is the basis of the claimed exemption." Exemption 7(A) bars "interference" with enforcement proceedings, but does not *per se* bar the use of FOIA as an aid in all litigation.

ing with labor board discovery in pending enforcement proceedings by virtue of a back-door amendment to the FOIA when it could very easily have done so by direct amendment to Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), or by a blanket enactment pertaining to discovery in pending administrative enforcement proceedings." 534 F.2d at 491–92.

*See also New England Medical Center, supra,* 548 F.2d at 383, and *Roger J. Au & Son, Inc. v. NLRB, supra,* 538 F.2d at 82.

These cases recognize that use of FOIA to expand a litigant's discovery rights inevitably upsets the carefully calibrated balance established by the applicable discovery rules. It is self-evident that additional discovery will strengthen the position of a party defending an enforcement action at the expense of the government case.[9] The courts have not always expressed satisfaction with the existing limitations on discovery, *e. g.,* Judge Orrick likened NLRB discovery rules to "trial by ambush" in *Capital Cities Communications, Inc. v. NLRB,* 409 F.Supp. 971 (N.D.Cal.1976), but felt that it was up to Congress to explicitly broaden the available discovery.

A strict FOIA analysis implies that the release of materials otherwise unavailable to a litigant would increase a defendant's resources and thereby weaken and interfere with the government's efforts in an enforcement action.

The court agrees that the legislative history does sustain this analysis. In introducing the amended exemption 7(A) to the Senate, Senator Hart stated that he believed that Congress desired to "prevent harm to the Government's case in court by *not allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have."* [10] (Sourcebook at 332, emphasis added.)

Similarly the Attorney General's Memorandum on the 1974 Amendments cites as "[o]ne example of interference when litigation is pending or in prospect is harm to the Government's case through the premature release of information not possessed by known or potential adverse parties." [11] Sourcebook at 517–18.

The defendants argue that these FOIA cases are distinguishable as NLRB actions. It is true that many NLRB-related FOIA cases have stressed the unique nature of these labor proceedings, and have contained language limiting their applicability accordingly. *Title Guarantee, supra; New England Medical Center, supra; see also, Goodfriend Western Corp. v. Fuchs,* 535 F.2d 145 (1st Cir. 1976), and *Climax Molybdenum v. NLRB,* 407 F.Supp. 208 (D.Colo.1975).

On the other hand, the restrictive nature of administrative labor cases has been anal-

**9.** In particular, the government stresses that release of some of the requested information would undermine the principle of "reciprocal discovery" found at F.R.Cr.P. 16(b)(1)(A) and (B). This obligates a defendant to allow the government certain discovery in return for receiving materials pursuant to Rule 16(a)(1)(C) and (D). If a defendant could obtain the same information without resort to 16(a)(1)(C) and (D), the government would be deprived of a claim to discovery of the materials provided by the reciprocal discovery principle.

**10.** The concern about release of otherwise unavailable information to a litigant does not undercut the principle that the identity of the FOIA plaintiff is essentially irrelevant. What matters is whether the information is appropriate for immediate release to a current or prospective litigant. If the information is not to be released to any litigant, then the agency is justified in withholding disclosure to any FOIA

plaintiff. *National Public Radio v. Bell, supra.* Otherwise the policy of the exemption could be subverted by the use of straw plaintiffs, or by dissemination by an unrelated member of the public. FOIA contains no restrictions which would bar further spread of the information after it is released by the agency.

**11.** The plaintiffs appear to emphasize the words "information not possessed", and seek to argue that they are at least entitled to release of those materials in the government's files which they *already* possess. They further argue that no harm to the government's case could flow from release of information already known to the defendants in the criminal case. This is not correct. Even if the defendants do already possess the documents, they do not know the limits of the information possessed by the prosecution. Partial revelation of the breadth of the prosecution's information is in itself valuable information.

ogized with the limitations on discovery in criminal prosecutions. *E. g.,* in *Vegas Village Shopping Corp. v. NLRB,* No. CV 76–916–RJK (C.D.Cal. 4/26/76), the role of General Counsel for the NLRB is compared to a U.S. Attorney in a criminal case, and the limitations on release of witness statements is mirrored against the provisions of the Jencks Act. *Cf. Title Guarantee, supra,* 534 F.2d at 487.

Furthermore, the argument of *Title Guarantee* that Congress did not intend to expand *sub silentio* the arsenal of discovery weapons has been followed in suits outside the realm of labor law. In *Bryant v. IRS, supra,* the court noted the dearth of any precedent on the relationship of FOIA to an income of tax fraud prosecution. Nonetheless, Judge Gignoux felt that "the applicable principles are clearly present in the leading case of *Title Guarantee Co. v. NLRB.*" 76–2 USTC at 84,952.

Still more persuasive is the reasoning of the Fifth Circuit in *U. S. v. Murdock, supra* (criminal tax case). The court stated that "had Congress intended to amend the explicit discovery procedures set forth in Rule 16, Fed.R.Crim.P., by enactment of the FOIA, it could undoubtedly have done so. No such intention appears in either the Act or its legislative history. [Citing *Title Guarantee*]." 548 F.2d at 602.

■ While *Murdock* recognized that FOIA does provide an independent means of obtaining information through the judicial process,[12] this language does not mean that the limitations on criminal discovery have no bearing on the FOIA exemptions. The *Murdock* holding goes beyond the position that a pending FOIA case should not justify a delay in other litigation (see p. 816, *supra*). It stated that "[a]lthough

information obtained through the FOIA may be useful in a criminal trial, we find that *the FOIA was not intended as a device to . . . enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure.*" 548 F.2d at 602.[13]

■ Arguments about the fairness of the current rules of criminal discovery are irrelevant to an analysis of the FOIA exemptions. What is critical is the fact that use of FOIA as a discovery supplement would upset the congressionally approved balance of resources open to prosecution and defendants. Accordingly, the court finds that the Freedom of Information Act may not be utilized as a means of obtaining the release of information which would be protected from discovery in a pending or prospective enforcement proceeding.

## IV. Proving the Factual Basis for a 7(A) Exemption

■ The defendants have moved for summary judgment on the grounds that exemption 7(A) provides a complete defense to their withholding of the requested information. Of course, summary judgment is available only where there is no genuine issue of material fact. F.R.Civ.P. 56. The court must therefore determine whether the defendants have resolved all factual issues regarding the applicability of the 7(A) exemption to the documents in dispute.

This matter is not concluded by the simple fact that there is a pending criminal action. Nor is it resolved by the fact that the government asserts that these documents are to be found in its investigatory files. Senator Hart expressly indicated the intent of Congress to preclude the agencies

---

**12.** Exemption 7(A) would not apply, of course, to situations in which release of information by the government might be of use to litigants in civil actions outside the administrative realm unless the materials were also related to some other enforcement action.

**13.** It is also true that permitting FOIA to be readily used as a criminal discovery tool would have a significant impact on the federal judicial system. This would encourage many criminal

defendants to file FOIA complaints as a matter of course, tremendously increasing the already burdensome backlog of FOIA cases. *See Weissman v. CIA,* No. 76–1566 (D.C.Cir. 1/6/77). It would also increase the administrative burden to federal agencies, and would delay the resolution of the remaining FOIA suits, undermining the rights of those members of the public whom Congress primarily intended to benefit.

from using the "contamination technique" whereby non-exempt information would be withheld by being commingled in a large investigatory file with items shielded by the exemptions. Sourcebook at 451. Cf. pp. 815–816, *supra.*

The determination of the factual validity of a FOIA exemption claim evokes the judicial conundrum inherent in the Act. As the court noted in *Vaughn v. Rosen, supra* :

> "In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information, . . . This factual characterization may or may not be accurate. It is clear, however, that appellant cannot state that, as a matter of his knowledge, this characterization is untrue." 484 F.2d at 823–24.

The Freedom of Information Act reflects congressional skepticism at the propriety of much of the government's bureaucratic secretiveness. Yet the nature of a FOIA case, as noted in *Vaughn v. Rosen,* initially places the courts and the adverse parties in a position of dependence on the good faith of the agency. Courts may conduct an *in camera* inspection, but are ill-equipped to evaluate the precise relationship of the documents to the enforcement proceedings. *Cf. Cessna Aircraft Co. v. NLRB,* 542 F.2d 834 (10th Cir. 1976).

Under an adversary system of litigation, it would be ordinarily the task of the FOIA plaintiff to argue the factual inapplicability of the exemption to the documents. Of course, to allow the plaintiffs to see the documents would in this case permanently "let the cat out of the bag". Nor will the filing of a detailed index itemizing the withheld documents and justifying their exemption, following the suggestion in *Vaughn v. Rosen,* necessarily provide a better solution. The government is correct in noting that a detailed index would be a cure as perilous as the disease. Such an index would enable the astute defendants in the criminal case to divine with great accuracy the identity and nature of the information in the possession of the prosecution.

The courts have been afforded a variety of tools for resolving these FOIA exemption claims, although none of them is wholly satisfactory.

The statute expressly provides for judicial *in camera* inspection, 5 U.S.C. § 552(a)(4)(B). However, *in camera* inspection is extremely burdensome. Particularly where many documents are in dispute, the requisite "investment of judicial energy" has been held "[neither] justified [n]or even permissible." *Vaughn v. Rosen,* 484 F.2d at 825; *Weissman v. CIA.* While noting that *in camera* review may "in some situations . . . be necessary and appropriate," the Supreme Court nonetheless felt that "it need not be automatic." *EPA v. Mink, supra,* 410 U.S. at 93, 93 S.Ct. at 839.

Instead, the court suggested that an agency be allowed "by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency." *EPA v. Mink, supra,* 410 U.S. at 93, 93 S.Ct. at 839. In *Weissman v. CIA, supra,* the D.C.Circuit upheld the granting of summary judgment by the trial judge on the basis of such affidavits.

It is critical to note, however, that the *Weissman* court emphasized the good faith conduct of the CIA in the lawsuit:

> "The CIA dealt with the instant request in a conscientious manner. It disclosed much material, it released additional material as the result of an administrative appeal, and it came forward with newly discovered documents as located. Agency documents have been released to plaintiff-appellant on four separate occasions. The Agency submitted affidavits summarizing each document, or portion of a document withheld, and indicated the rationale for each claimed exemption. It filed an indexed description of all material withheld, and supported the withholding by explicit affidavits."

The court therefore stressed that "[t]here is no reason, on this record, to presume bad faith on the part of the CIA."

The defendants in the instant cases argue that they have taken the same steps, and demonstrated the same good faith as the CIA in *Weissman.* They note that they have released on several occasions documents to the plaintiffs, and that they have expended a substantial amount of time searching their files to determine what information should be made available. They also claim that the two affidavits submitted in support of this motion have adequately "summarized documents and indicated the rationale for the claimed exemptions."

The affidavits in support of the government's motion for summary judgment were sworn to by John W. Salus II, the prosecutor assigned to *U. S. v. Baskes, et al., supra,* and Bernard S. Bailor, an attorney with the Department of Justice assigned to the Project Haven investigation.

The affidavits describe in a brief fashion the nature of the Project Haven investigation, and the pending prosecution in Case No. 76 CR 585, and outline the efforts made to comply with the instant FOIA requests. The primary content of the affidavits consists of a categorization of the documents at issue,[14] and assertions of the manner in which disclosure might impede the government's efforts at enforcement actions.

█ The court finds, after careful consideration of these affidavits, that they do not meet the standards set in *EPA v. Mink, supra,* for *detailed* affidavits sufficient to enable the court to determine the applicability of a FOIA exemption. In particular, the court finds that the mere lumping of all the documents into broad categories, some unified only by the identity of the source from which the document was obtained, does not at all approximate the showing demanded by *EPA v. Mink,* and provided to the court in *Weissman.*

Unlike *Weissman,* the government has not summarized *each* document or portion thereof at issue, nor has it filed any indexed description of the withheld material accompanied by explicit affidavits articulating the basis of the withholding. In essence, the government has not enabled the court to go beyond the labels which the defendants seek to apply to the documents, to the basic question of how exemption 7(A) applies to *each* withheld document.

█ Of course, documents which would reveal witness identities, the nature of prospective testimony, or the identity of confidential sources are entitled to the exemption. But the simple assertion that a document was provided by a prospective witness or a confidential informant does not *per se* lead to the conclusion that such detrimental effects are unavoidable.

The statute recognizes that some records, which might otherwise be subject to release, will contain passages necessitating the application of one of the exemptions. Accordingly, 5 U.S.C. § 552(b) provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." Senator Kennedy commented that the 1974 amendments contained a "strong statement . . . against withholding records where deletions would as well serve the purposes of the exemption under which they are withheld." Sourcebook at 292. This is another facet of the congressional policy that exemptions should be determined by content rather than label.

---

14. The Bailor affidavit lists the following categories: (1) internal reports of investigations, (2) witness statements and affidavits, (3) documents furnished by witnesses, (4) material furnished by confidential informants, (5) records of surveillance, (6) analysis of evidence, (7) reports prepared by IRS officials summarizing the status of various investigations, (8) diplomatic correspondence.

The Salus affidavit has a similar list of categories: (1) unsigned witness statements, and memoranda of interviews with witnesses, (2) documents furnished by witnesses, (3) public record documents, (4) internal reports of the IRS, (5) analysis of evidence pertaining to 76 CR 585, (6) tax return information.

Nonetheless, the government contends that the duty to segregate non-exempt portions is inapplicable "where Exemption 7(A) is appropriately asserted to all the records in issue." The cases cited by the government for this proposition are not persuasive. *Exxon Corp. v. F.T.C.,* 384 F.Supp. 755 (D.D.C.1974), was decided prior to the 1974 amendments which limited exemption 7 to "records" rather than "files". The court can find no language in *Seafarers International Union v. Baldwin, supra,* 508 F.2d at 129, supporting the government's position. Indeed that citation quotes the 1974 amendment mandating the provision of reasonably segregable non-exempt portions. While *New England Medical Center* establishes a broad standard for 7(A) "interference" it also affirms that this standard does not exclude records on the basis of the label attached to the file. 548 F.2d at 386.

Contrary to the government's position, Senator Kennedy explicitly stated that the provisions of the FOIA amendments for release of "portions of records", and the deletion or segregation of exempt portion of files or records "would apply to the area of investigatory files [i. e. exemption 7] as well as to the other exemptions of the act." Sourcebook at 336.

It is true, however, that it would be inappropriate for the court "to undertake a line-by-line analysis of agency records in each case." *Weissman, supra.* But while the court need not exhaust its time in such a review, the government does have the burden to prove its entitlement to the exemption. The government must therefore review its documents to determine whether

deletions, editing, or other methods of segregation can narrow the breadth of the claimed exemption. It must be able to persuade the court that it has reviewed the materials accordingly, and that it is not seeking to withhold more than is absolutely necessary to satisfy the purposes of the exemption.[15]

██ Furthermore, while documents which would reveal investigative techniques and procedures are exempted, FOIA does not shield materials relating to unauthorized or illegal investigative tactics.[16] *Weissman, supra.*

In sum, the affidavits relate to the government's categorizations rather than the contents of the documents at issue. They are insufficient to enable the court to verify the appropriateness of the labels applied. They do not preclude the possibility that some of the withheld material might be reasonably segregated to allow additional releases without disclosure of protected information. Similarly, they do not negate plaintiffs' assertions that they may relate to illegal investigative activities which must be revealed.[17]

The affidavits also attempt to depict the anticipated interference which release of these materials would engender. The list of government concerns is quite comprehensive and asserts grounds which have been repeatedly acknowledged by the courts. *E. g., New England Medical Center Hospital v. NLRB, supra; Title Guarantee v. NLRB, supra; National Public Radio v. Bell, supra; Bryant v. IRS, supra; Electri-flex Co. v. NLRB, supra.*[18] The government is not ob-

---

15. It may well be true that some documents cannot be edited or presented in any modified manner without disclosing the identity of the sources. This may be especially the case in a tax fraud prosecution, where the defendants may be able to readily "fill in the blanks." Still it is incumbent upon the government to clearly indicate why reasonable segregation is not possible.

16. See discussion of charges of illegality directed at the Project Haven investigation, *infra* at 823.

17. In addition, there is no special exemption for documents which reveal only routine investigative techniques and procedures.

Finally, the defendants appear to make a claim based on the protection given to "diplomatic correspondence" under exemption 1, but have not asserted that these materials have been classified as confidential pursuant to any Executive Order.

18. These grounds include fears of disclosure of (1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions

ligated to specify in great detail the manner in which release would set off these dangers. However, if the court is to hazard a guess as to the connection between the evils anticipated by the government and the documents in dispute, it must have a much clearer understanding of the contents of these documents.

Finally, it must be stressed that *Weissman* was primarily based on the court's confidence that there was no reason to suspect the defendant's bad faith. The instant cases, however, relate to materials deriving in part from Project Haven. The plaintiffs in these cases have asserted that Project Haven utilized illegal and outrageous investigatory methods to develop the pending criminal indictment in 76 CR 585. An extensive hearing before Judge Manos in *U. S. v. Payner,* 434 F.Supp. 113 (N.D.Ohio 1977) found that Project Haven was involved in action that was "both purposefully illegal and an intentional, bad faith act of hostility directed at [constitutional rights]." at 135.

The contention that these materials being withheld may cast further light on the range of illegal, bad faith investigatory tactics cannot be dismissed as unfounded speculation.[19] The information currently on record does at least provide the defendants with a motive to be unduly secretive about the contents of their files. Thus, although the record of the government's conduct in these five cases provides no independent basis for such a suspicion, the court is still reluctant to rely upon the generalized assertions in the affidavits that all the materials fall into exempt categories.

The court is not limited to *in camera* inspection of the documents themselves, and governmental affidavits as tools for resolving disputes over FOIA exemptions. It can also, pursuant to the model laid down in *Vaughn v. Rosen,* require a detailed index, itemizing the documents at issue and justifying their non-disclosure. Essentially, the court can structure the elements of the government's proof to balance its need for information against the concerns and burdens of the agency.[20]

As noted, the principal problem with a standard *Vaughn v. Rosen* index is the government's fear that detailed itemization and justification would enable the objects of its investigation to "fill in the blanks", *i. e.,* that it would impede its enforcement almost as seriously as complete disclosure. Despite the plaintiff's objections that this did not occur in the case of the limited index supplied in Case No. 76 C 3515, the court acknowledges the validity of the government's concern.

## V. The Proof to be Required in the Instant Cases

The court has commented that the structuring of an appropriate method of proof in a FOIA case poses a true judicial conundrum. The need to shield protected information reduces the efficacy of the adversary process in highlighting the central lines of the dispute. A full *in camera* examination is an unacceptable allocation of judicial effort, just as uncritical acceptance of agency labels violates the purpose of the Act. No solution in this area is without serious flaws and limitations.

Still, in light of the information now possessed by the court, a reasonably effective

being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act, (12) attorney work product, (13) the methods of surveillance, (14) subjects of surveillance. The government also fears that disclosure will enable the objects of its investigation to "construct defenses", and perhaps even tamper with evidence and witnesses. A national security argument is also raised.

19. The court emphasizes that this does not mean that plaintiffs can routinely undermine the validity of affidavits submitted by FOIA defendants by unsubstantiated suspicions of governmental bad faith.

20. *E. g., see Department of the Air Force v. Rose, supra,* which approved the *in camera* review of "case summaries" as a workable compromise between individual rights and the preservation of public rights to official information.

method of proof can be devised which is fitted to the requirements of these consolidated cases.

The method of a detailed index was devised by the court in *Vaughn v. Rosen* for the benefit of the court rather than the plaintiffs. There is no reason why the court cannot consider such an index *in camera*, thereby preventing undue disclosures to the plaintiffs. While *in camera* consideration will deprive the court of the benefit of plaintiffs' critique of the index, it does have certain advantages. It is preferable to the laborious task of scrutiny of the documents themselves. Furthermore, a properly drawn index will summarize documents, and put into relief their fundamental facts and importance. An index will also focus the court's attention on the basis of the government's claim that each document is covered by exemption 7(A).

## VI. Summary

The court holds that exemption 7(A) of the Freedom of Information Act shields the premature release of information which would be protected from discovery in a pending or prospective administrative ac-

tion or criminal prosecution. Furthermore, exemption 7(A) bars the release of legally obtained investigatory records compiled for enforcement proceedings where they would interfere with those proceedings. Interference, under the terms of the statute, encompasses the wide range of concerns articulated by the defendants, and summarized at footnote 18, *supra*. In particular, the court emphasizes that exemption 7(A) prevents the disclosure of any materials which might enable litigants in enforcement actions to discern the identity of prospective government witnesses, as well as confidential informants, or the nature of the government's evidence and strategy.

■ Nonetheless, summary judgment in behalf of the defendants is not appropriate at this time, because the government has not yet satisfactorily proven that all the withheld documents to qualify for the protection of exemption 7(A).[21]

Accordingly, the government shall submit within 60 days a detailed verified index for *in camera* inspection by the court.

The index shall itemize and summarize in sufficient detail each document or portion

---

**21.** Although the first 87 pages of the government's initial brief argue the government's primary defense, exemption 7(A), they have also raised in passing a claim under exemption 3. Exemption 3 pertains to materials "specifically exempted from disclosure" by statutes other than FOIA. The government asserts that most of the documents at issue constitute "returns" or "return information" pursuant to the newly amended § 6103 of the Internal Revenue Code, 26 U.S.C. § 6103(b)(1) and (2). This amendment, part of the Tax Reform Act of 1976, authorizes the Secretary to deny disclosure of these materials if he determines that disclosure would seriously impair tax administration. § 6103(c) and § 6103(e)(6).

Exemption 3, which has also been recently revised by Congress, applies only where the statute in question mandates withholding of information, and leaves no discretion, or where it "establishes particular criteria for withholding or refers to particular types of matters to be withheld."

While the legislative history of the Tax Reform Act does reveal congressional intention that other types of tax-related documents, covered by § 6110, be exempt from FOIA, there is no express discussion of whether § 6103 is to be treated as an exemption 3 statute. The interconnection of these two recent statutory

amendments is therefore a matter of first impression, which has been briefed in a rather sparse fashion. Contrary to the government's representation, it is not "patently clear" that this is a non-discretionary disclosure statute, or that it establishes criteria for non-disclosure with sufficient particularity.

For the purposes of this motion, it is sufficient to note that "tax administration" as defined at § 6103(b)(4) encompasses the "application of the internal revenue laws", as well as "assessment, collection, enforcement, litigation . . . under such laws . . . ." Thus impairment of tax administration refers, *inter alia*, to interference with tax related enforcement actions. From the court's understanding of these cases, it is apparent, absent contrary information, that any justification for withholding of information pursuant to § 6103 must reflect the assertion of a perceived interference with enforcement actions (as opposed to impairment of the statistical functions of the IRS or the ability to formulate proposed new laws). To this extent, § 6103 and exemption 3 raise no issues of fact or law different from those considered and determined herein with respect to exemption 7(A).

of a document for which the exemption is claimed. This shall include information referring to the origin and source of the document, as well as a brief statement of its contents.

The index shall further justify the claimed exemption by a brief notation of the grounds upon which it is believed that disclosure would interfere with enforcement actions.

With respect to documents provided by potential witnesses and confidential informants, the index shall state with as much specificity as necessary the grounds upon which it is felt that reasonably segregated or edited portions thereof may not be released.

The government shall also provide a separate index of all withheld documents deriving from or relating to any unauthorized or illegal investigative activities, or activities which were arguably without legal justification, including but not limited to the "briefcase incident" which was considered in *U. S. v. Payner, supra.* This index shall indicate the basis of any other asserted exemption from disclosure, and shall be accompanied by an *in camera* submission of the documents in question.[22]

---

22. The plaintiffs have argued in the alternative that any Freedom of Information exemption for the documents in case No. 76 C 3384 was waived by the release of this information to Congress, and the partial disclosure of the documents to the plaintiffs.

Section 552(c) expressly states that FOIA does not provide a basis for withholding information from Congress. Case law is clear on the point that release of information to Congress will not constitute a waiver of any FOIA exemption. *Aspin v. Department of Defense,* 160 U.S.App. D.C. 231, 491 F.2d 24, 26 (1973); *Safeway Stores, Inc. v. FTC,* No. 76–1174 (D.D.C. 1/24/77); *Exxon v. FTC,* 384 F.Supp. 755 (D.D. C.1974).

The plaintiffs have introduced no meaningful facts to counter the government's assertion that the release of edicted materials to the plaintiffs was a "low level" error.