Burton W. KANTER, Plaintiff,

v.

INTERNAL REVENUE SERVICE et al., Defendants (two cases).

Alan H. HAMMERMAN, Plaintiff,

v.

DEPARTMENT OF JUSTICE et al., Defendants.

Roger T. BASKES, Plaintiff,

v.

DEPARTMENT OF JUSTICE et al., Defendants.

Burton W. KANTER, Plaintiff,

v.

DEPARTMENT OF JUSTICE et al., Defendants.

Nos. 76 C 3384, 76 C 3515, 76 C 4264 to 76 C 4267.

United States District Court, N. D. Illinois, E. D.

May 29, 1979.

**554**

Randall G. Dick, Levenfeld & Kanter, Chicago, Ill., and San Francisco, Cal., for plaintiffs.

John J. McCarthy, Donald J. Gavin, Judith H. Johnson, Tax Div., U. S. Dept. of Justice, Washington, D. C., J. T. Hynes, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

This case is now before the court for final ruling on the applicability of various Freedom of Information Act ("FOIA") exemptions to the documents indexed and submitted *in camera* pursuant to the court's order of May 27, 1977, as reported at 433 F.Supp. 812. In the two years between that order and this, the parties have engaged in extensive and fruitful negotiations—numerous documents have been produced by the defendants, and the documents in dispute have been reduced from approximately 13,000 to 487.

The 487 documents remaining at issue have been submitted to the court *in camera*, together with a detailed index which summarizes the content of each document, and specifies the FOIA exemptions which the government claims with regard to each document. The defendants have filed a motion for summary judgment on their claimed exemptions, and the parties have briefed the relevant legal issues.

### A. *Exemption (b)(7)(A).*

FOIA subsection (b)(7)(A) provides an exemption for:

"investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . ."

In the memorandum opinion and order of May 27, 1977, the court examined the cases interpreting this subsection, and held as follows:

"The court holds that exemption 7(A) of the Freedom of Information Act shields the premature release of information which would be protected from discovery in a pending or prospective administrative action or criminal prosecution. Furthermore, exemption 7(A) bars the release of legally obtained investigatory records compiled for enforcement proceedings where they would interfere with those proceedings. Interference, under the terms of the statute, encompasses the wide range of concerns articulated by the defendants, and summarized at footnote 18, *supra*. In particular, the court emphasizes that exemption 7(A) prevents the disclosure of any materials which might enable litigants in enforcement actions to discern the identity of prospective government witnesses, as well as confidential informants, or the nature of the government's evidence and strategy." 433 F.Supp. at 824.

Footnote 18 lists a range of types of interference encompassed by the exemption:

"These grounds include fears of disclosure of (1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act, (12) attorney work product, (13) the methods of surveillance, (14) subjects of surveillance."

In support of its claim that almost all of the 487 documents remaining in dispute are covered by this exemption, the government has submitted the affidavit of Ronald A. Cimino, an attorney with the Criminal Section, Tax Division, Department of Justice. Mr. Cimino sets forth information concerning the on-going investigation being conducted by the I.R.S., the Department of Justice, and Grand Jury # 78–8 sitting in Miami, Florida. Mr. Cimino is directly involved in supervising the grand jury investigation. The affidavit discusses the documents being withheld, and specifically identifies the manner of interference with the on-going investigation which is feared with respect to each type of document.

The court must, of course, make the final determination whether the documents submitted *in camera* are within the claimed exemption. However, the parties have raised two initial legal issues regarding 7(A). First, the defendants contend that the Supreme Court's recent decision in *N. L. R. B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), establishes that the government need not prove applicability of the exemption on a document by document basis, but instead can rely on generic classifications. The plaintiffs disagree with this interpretation, and direct the court's attention to the legislative history of this exemption and to Judge Leighton's decision in *Calvin Eisenberg v. Internal Revenue Service*, Civil Action No. 77 C 339 (September 28, 1978).

In *Robbins Tire & Rubber Co.*, the Court was presented with a case in which the N.L.R.B. resisted production of numerous documents because they contained statements of witnesses gathered in connection with a pending unfair labor practice proceeding. The lower courts held that exemption 7(A) did not apply because the N.L.R.B. had not proved that release of the witnesses' statements would pose any unique or particular danger such as witness intimidation in the particular unfair labor practice proceeding there involved. The Supreme Court held that in appropriate cases, generic classifications may be relied upon to support the government's burden:

"While the Court of Appeals was correct that the amendment of Exemption 7 was designed to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes, we think it erred in concluding that no generic determinations of likely interference can ever be made. We conclude that Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" 437 U.S. at 236, 98 S.Ct. at 2323–24.

■ Most of the documents in this case involve certain types of information, the release of which would entail a high risk of interference with on-going investigations and enforcement proceedings. *Robbins Tire & Rubber Co.* indicates that the court may conclude that such documents are within the 7(A) exemption, even if the government does not prove the exact way in which disclosure of each document would interfere—the government would not have to show, for example, that the specific witness involved is likely to refuse to testify if he is threatened. This approach is the same as that indicated in the court's opinion of May 27, 1977. Judge Leighton's decision in *Eisenberg v. IRS* concerns the distinct question whether *Robbins Tire & Rubber Co.*

alters the need for a detailed index; that question is not at issue in this case.

The second initial issue is raised by the plaintiffs' claim that the documents originally identified by the defendants as Volume V—"Memoranda and correspondence relating to the obtaining of records which later resulted in the so-called 'briefcase and rolodex' incidents" and Volume VII—"Documents deriving from or relating to arguably illegal investigative activities, but limited to those documents relevant to the transactions at issue in *United States v. Baskes,* No. 76 CR 585 [442 F.Supp. 322] (N.D.Illinois)", cannot be exempt because they "relate to illegal activities."

In the opinion of May 27, 1977, the court recognized that "FOIA does not shield materials relating to unauthorized or illegal investigative tactics." In support of this rule, the court cited *Weissman v. C. I. A.,* 184 U.S.App.D.C. 117, 565 F.2d 692 (D.C. Cir. 1977). In that case, the D.C.Circuit held that the C.I.A. did not have "law enforcement" authority to conduct a five-year "background check" of a citizen allegedly in order to determine his suitability for recruitment by the agency. Accordingly, the court held that records of this investigation were not within the exemption for documents "compiled for law enforcement purposes."

■ There is no doubt that the "briefcase and rolodex incidents" involved unauthorized and improper activity by agents of the IRS, *see United States v. Baskes,* 442 F.Supp. 322 (N.D.Ill.1977); *United States v. Payner,* 434 F.Supp. 113 (N.D.Ohio 1977), aff'd 590 F.2d 206 (6th Cir. 1979). These activities were not authorized for law enforcement or any other purpose. Any records which *were obtained* as a result of these activities, or which contain information obtained solely through these tactics would not be entitled to the 7(A) exemption. However, all documents of this type were included in the original Volume III, which is no longer in dispute. The documents contained in Volumes V and VII are part of the larger, authorized, enforcement proceedings against Baskes *and other tax-*

*payers.* Thus, many are within the 7(A) exemption. In addition, since many of the documents in these volumes contain information about third-party taxpayers, their disclosure is, in many cases, prohibited, exempted, or both (see discussion in part B, *infra*).

### B. *Exemption (b)(3).*

■ Subsection (b)(3) of FOIA provides an exemption for matters which are:

"specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; . . ."

26 U.S.C. § 6103 is such a statute, *Fruehauf Corp. v. IRS,* 566 F.2d 574 (6th Cir. 1977). This statute establishes the general rule that "[r]eturns and return information shall be confidential." The statute prohibits disclosure of tax returns and "return information" except in certain specified instances in which disclosure may be made to certain specified persons. "Return information" is defined to include:

"a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, . . ."

Thus, to the extent that many of the documents remaining in dispute contain

third party tax return information, they are exempt from disclosure under (b)(3).[1]

## C. *Exemption 7(C).*

■ Subsection (b)(7)(C) provides an exemption for:

"investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy . . ."

The notion of an "unwarranted invasion" in this exemption requires the court to balance the public's interest in disclosure against the individual's right to privacy, *Air Force v. Rose*, 425 U.S. 352, 373, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (interpreting the previous (b)(6)); *see also Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1136 fn. 7 (4th Cir. 1977) (the *Rose* balancing test is appropriate under the new 7(c), but perhaps even *greater* weight should be given to the individual's interest in privacy).

■ The plaintiffs argue against application of this exemption in this case again on the ground that inasmuch as illegal tactics were used, the public has a strong interest in disclosure. This is an appropriate consideration, and it has been applied as to the contents of the brief case and rolodex. However, the documents remaining in dispute simply are not directly related to the illegal investigative activity. Thus several of the documents do come within this exemption, as well as others.

## D. *Exemption (b)(5).*

This exemption applies to:

"inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency; . . ."

■ The effect of this subsection is generally to incorporate the three traditional privileges available to a governmental agency in normal civil litigation—the governmental or deliberative process privilege; the attorney-client privilege; and the attorney work product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The governmental privilege permits the withholding of documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."

■ The plaintiffs agree that exemption (b)(5) incorporates the governmental, attorney-client and attorney work product privileges, but urges that the exemption does not extend to purely factual recitations, *Mead Data Central, Inc. v. Air Force*, 184 U.S.App.D.C. 350, 566 F.2d 242 (D.C. Cir. 1977). Factual portions of essentially deliberative memoranda should be disclosed if they can be segregated from the deliberative sections. However, none of the documents which the court has found to be within the governmental privilege include separable factual portions which are not otherwise exempt. Thus, although the plaintiffs are correct on the law, the rule cited does not require disclosure of the whole or any part of the documents remaining in dispute.

In addition, the plaintiffs argue that the defendants have not met their burden of proof with regard to the attorney-client and attorney work product privileges. However, all of the documents which the defendants contend are covered by these privileges are also covered by some other exemption. Thus, the applicability of these privileges to this case need not be decided.

## E. *Exception (b)(2).*

■ Subsection (b)(2) exempts matters which are:

"related solely to the internal personnel rules and practices of an agency; . . ."

However, all of the documents arguably covered by these waivers are otherwise exempt from disclosure.

---

1. The government states that it has accepted waivers from certain taxpayers, permitting disclosure of certain information to the plaintiffs.

The Seventh Circuit has held that this exemption applies to "administrative markings such as file numbers, initials, signature and mail routing stamps, and references to previous communications utilized to maintain control of an investigation," *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977). A few of the documents remaining in dispute are of this nature, and thus are exempt under (b)(2).

F.   *Exemptions 7(D) and (7)(E).*

■   Finally, there are a few documents which the court has determined are exempt under the exemptions provided by subsections (b)(7)(D) and (b)(7)(E):

> "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would  .  .  .  (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, .  . confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, .  .  ."

*See generally, Scherer v. Kelley*, 584 F.2d 170 (7th Cir. 1978).

The principles discussed in the preceding pages guided the court's review of the documents remaining in dispute and its interpretation of the exemptions claimed by the defendants.  All of the documents are covered by at least one of the exemptions discussed above.

Accordingly, the defendants' motion for summary judgment is hereby granted; the cause is hereby dismissed.