**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Church E. MURDOCK, Jr., Defendant-Appellant.**

**No. 76–1435**
**Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

March 11, 1977.

Church E. Murdock, Jr., pro se.

Wayman G. Sherrer, U. S. Atty., Melton L. Alexander, Asst. U. S. Atty., Birmingham, Ala., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Chief

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Appellate Sect., Robert E. Lindsay, Atty., Wynette J. Hewett, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before AINSWORTH, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Dr. Church E. Murdock appeals his conviction for willfully failing to file federal income tax returns for three years. The sole issue presented by Murdock's brief is this: "whether the trial judge erred by withholding documents from defendant in evidentiary hearing which could have sustained his motion to quash indictment on grounds of selective and discriminatory prosecution." Finding no error in the rulings of the trial judge, we affirm.

Defendant admittedly refused to file income tax returns although he had a gross income in excess of $23,000 for each of the three years in question. He filed a motion to quash the indictment for such refusal, however, on the ground that he had been singled out for selective and discriminatory prosecution for "asserting his First Amendment Religio/Political Freedoms to be a Protestant or Protestor." Defendant contends that his refusal to file a return is a form of protest based on religious convictions and that he was singled out for selective prosecution for exercising the rights and freedoms afforded him by the First Amendment.

In connection with the motion to quash the indictment and the hearing on the motion, Murdock requested discovery of numerous Government documents. The Government produced some of the documents, agreed to an *in camera* inspection of others, and was relieved from producing some information by court order. After an *in camera* inspection, the court allowed defendant to see some of the material but denied him access to certain documents.

The Federal Rules of Criminal Procedure govern this case. Rule 16(a)(1)(C) provides that discovery of documents in possession of the Government will be allowed the defendant if they are "material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." The kind of documents discoverable are generally those that relate to the defendant and the charge against him, not to third persons.

■ To avoid the use of a discriminatory prosecution defense as a means of obtaining information to which the defendant is otherwise not entitled, other circuits have held that a defendant must prove a "colorable entitlement" to the defense before discovery is allowed. *United States v. Oaks,* 508 F.2d 1403 (9th Cir. 1974), *aff'd following remand,* 527 F.2d 937 (9th Cir. 1975), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974); *United States v. Berrigan,* 482 F.2d 171, 181 (3d Cir. 1973). This appears to be a sound rule for this Court to follow. To hold otherwise would encourage the assertion of such defense, no matter how spurious, as a means of burdening criminal trials with massive discovery of material completely irrelevant and immaterial to the defendant's case. The test is materiality, and the court is entitled to have the defendant demonstrate the materiality of what he seeks by proving a colorable entitlement to the defense before discovery is allowed.

■ Tested by this standard, the defendant fails to show error in the rulings of the trial court. First, a review of the record reveals that defendant has failed to present evidence tending to show that others similarly situated have not generally been prosecuted. Second, there is no showing that the Government's prosecution of him was selective, invidious, in bad faith, or based on impermissible considerations such as race, religion, or his exercise of constitutional rights. *See United States v. Smith,* 523 F.2d 771, 782 (5th Cir. 1975) (U.S. appeal pending); *United States v. Berrios, supra,* 501 F.2d at 1211–1212.

To the contrary, the record, rather than appearing neutral on the matter, tends to show that defendant was not singled out for any reason other than his failure to comply with the law. The investigation was initiated when a computer print-out showed that defendant, a surgeon, had not filed a tax return, although he had filed in previous years. The Internal Revenue Service decided to prosecute only after a special agent determined that defendant's income was sufficient to require him to file a return, that defendant had not filed a return, and that he did not intend to file a return.

The trial court carefully considered the requests of the defendant, who proceeded *pro se* as he does here, allowed a great deal of discovery, and applied the correct standards in ruling on the requests. There is no indication that anything which the court denied to defendant would have been material to the preparation of his defense as required by the discovery rules.

Although not asserted to the trial court, defendant also contends on appeal that he is entitled to that which he sought under the Freedom of Information Act, 5 U.S.C.A. § 552(a)(2), or the Privacy Act of 1974, 5 U.S.C.A. § 552a(d).

■ The Freedom of Information Act (FOIA) was enacted to provide greater public access to records of the Government agencies. *See generally* S.Rep.No.813, 89th Cong., 1st Sess. (1965); H.R.Rep.No.1497, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin.News 1966, p. 2418. Although the FOIA sets forth specific procedures for obtaining disclosure of information, we find nothing in the legislative history or the Act itself to indicate whether the FOIA was intended to enlarge the scope of discovery under the Federal Rules of Criminal Procedure. The only reference tangentially relating to this problem is found in the House Report's discussion of the investigatory file exemption under the FOIA [now 5 U.S.C.A. § 552(b)(7)], which states that the bill amending the FOIA was not intended "to give a private party indirectly any earlier or greater access to investigatory files than

he would have directly in such litigation or proceedings." H.R.Rep.No.1497, *supra, reprinted in* [1966] U.S.Code Cong. & Admin. News, pp. 2418, 2428(7).

The only circuit that seems to have considered this issue is the Sixth Circuit in *Fruehauf Corp. v. Thornton,* 507 F.2d 1253 (6th Cir. 1974). In *Fruehauf,* petitioners sought a writ of mandamus compelling the district judge to stay a pending criminal conspiracy case until counsel could obtain compliance with the district court's order under the FOIA directing the IRS to disclose certain documents. The court denied the requested relief on the ground that petitioners were entitled to discovery under the Federal Rules of Criminal Procedure in their pending case and that any errors committed therein would be subject to appellate review. Citing the Supreme Court's decision in *Renegotiation Board v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974), the court stated that "the Freedom of Information Act was not intended to serve as a substitute for criminal discovery." 507 F.2d at 1254.

In *Renegotiation Board,* the Supreme Court had considered the issue of the effect of the FOIA on proceedings pending under the Renegotiation Act of 1951. Respondents, whose profits on defense contracts were undergoing renegotiation pursuant to the Act, brought suit under the FOIA to enjoin the Board from withholding requested documents and to stay negotiation proceedings until these documents were produced. The Supreme Court held that no injunctive relief should be granted. Emphasizing that the Renegotiation Act contemplated negotiation without interruption for judicial review, the Court ruled that in a renegotiation case the contractor must pursue its administrative remedies under the Renegotiation Act and could not obtain judicial interference with this procedure through preliminary litigation of a FOIA claim. The Court recognized that even though the FOIA's stress was on disclosure, it was on disclosure for the public, and not for the negotiating self-interested contractor. 415 U.S. at 22, 94 S.Ct. 1028. *But see*

Davis, Administrative Law of the Seventies § 3A.6–1 (1976). The Court then stated that "[i]nterference with the agency proceeding opens the way to the use of the FOIA as a tool of discovery over and beyond that provided by the regulations issued by the Renegotiation Board for its proceedings. Discovery for litigation purposes is not an expressly indicated purpose of the Act." 415 U.S. at 24, 94 S.Ct. at 1040 [citations omitted].

Following a similar approach, the United States Customs Court in a case involving the Customs Court rules, vis-a-vis the Government's refusal to produce certain documents claimed under the FOIA, stated that the FOIA was not enacted to provide discovery procedures for obtaining information during litigation, and therefore, the Act did not create a judicial discovery privilege. *Verrazzano Trading Corp. v. United States,* 349 F.Supp. 1401 (Cust.Ct.1972). The court reasoned that had Congress intended the Act to apply to judicial discovery proceedings, there would be no need for the provisions giving aggrieved parties a right to redress through the federal district courts. 349 F.Supp. at 1403.

The FOIA provides a comprehensive scheme for private parties to obtain agency records. The Act contemplates that a party seeking disclosure of agency records available under 5 U.S.C.A. § 552(a)(1), (2) shall request such records from the agency. If the agency then refuses this request, § 552(a)(4)(B) confers jurisdiction on the district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *See Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78 (E.D.N.Y.1975). The burden is then on the agency to establish entitlement to one of the exemptions found in § 552(b). 5 U.S.C.A. § 552(a)(4)(B). *See, e. g., B & C Tire Co., Inc. v. Internal Revenue Service,* 376 F.Supp. 708 (N.D.Ala.1974).

▪ In a criminal case the discovery proceedings are governed by the Federal Rules of Criminal Procedure, promulgated pursuant to 18 U.S.C.A. §§ 3771, 3772. Since Congress has the power to regulate the practice and procedures in the federal courts, *Sibbach v. Wilson & Co., Inc.,* 312 U.S. 1, 9, 61 S.Ct. 422, 85 L.Ed. 479 (1941), had Congress intended to amend the explicit discovery procedures set forth in Rule 16, Fed.R.Crim.P., by enactment of the FOIA, it undoubtedly could have done so. No such intention appears in either the Act or its legislative history. *Cf. Title Guarantee Co. v. NLRB,* 534 F.2d 484, 491 (2d Cir. 1976) (U.S. appeal pending) (dealing with the effect of the FOIA on discovery under the National Labor Relations Act).

We hold that the discovery provisions of the Federal Rules of Criminal Procedure and the FOIA provide two independent schemes for obtaining information through the judicial process. Although information obtained through the FOIA may be useful in a criminal trial, we find that the FOIA was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure.

This result is consistent with *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n. 10, 95 L.Ed.2d 1504, 44 L.Ed.2d 29 (1975) which held that the right of a plaintiff, who brings an action under the FOIA to compel production of agency documents, is neither increased nor decreased by the fact that he is a litigant in a pending suit. The Court stated that the Act is fundamentally designed to inform the public about agency action and not to benefit private litigants. Besides showing that disclosure under the FOIA is not related to litigation, the *Sears, Roebuck & Co.* case and numerous district court cases relying on it illustrate the kind of separate action contemplated by the Act. *See, e. g., Columbia Packing Co., Inc. v. United States Dept. of Agriculture,* 417 F.Supp. 651, 655 (D.Mass.1976); *Capital Cities Communications, Inc. v. NLRB,* 409 F.Supp. 971 (N.D.Cal.1976); *Climax Molybdenum Co. v. NLRB,* 407 F.Supp. 208 (D.Colo.1975), *aff'd,* 539 F.2d 63 (10th Cir. 1976).

▪ Similarly, defendant is afforded no relief under the Privacy Act. This Act was

designed to establish a Federal Privacy Board to oversee the gathering and disclosure of information concerning individuals and to provide management systems in federal agencies, state and local governments regarding such information. S.Rep.No. 1183, 93d Cong., 1st Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, p. 6916. To accomplish these purposes, the Act contemplates a request by an individual to an agency to gain access to his record, 5 U.S.C.A. § 552a(d)(1), followed by institution of a civil action against the agency in the appropriate district court if the agency refuses this request. 5 U.S.C.A. § 552a(g)(1). Once again, there is nothing in the Privacy Act or its legislative history to indicate a congressional intent to enlarge the scope of discovery in criminal cases by incorporating the procedure of the Privacy Act into judicial discovery proceedings.

We therefore hold that a criminal defendant has no supplementary discovery rights under these two statutes which would supersede the relevancy and materiality requirements of established discovery law. The district court properly applied the requirements of the discovery rules to the defendant's requests.

AFFIRMED.