745 So.2d 319 (1999)
John Wesley HENDERSON, Petitioner,
v.
STATE of Florida, Respondent.
No. 92,885.
Supreme Court of Florida.
February 18, 1999.
Rehearing Denied April 5, 1999.
*320 Rhonda S. Clyatt, Panama City, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, Florida, for Respondent.
Steven G. Mason, Orlando, Florida, for Florida Association of Criminal Defense Lawyers, Amicus Curiae.
KOGAN, Senior Justice.
We have for review the decision in Henderson v. State, 708 So.2d 642 (Fla. 1st DCA 1998). We accepted jurisdiction to answer the following question certified to be of great public importance:
DOES SECTION 119.07(8), FLORIDA STATUTES (Supp.1996), LIMIT A CRIMINAL DEFENDANT'S PRETRIAL DISCOVERY OF NONEXEMPT PUBLIC RECORDS REGARDING HIS OR HER PENDING PROSECUTION, TO THE DISCOVERY PROVISIONS IN FLORIDA RULE OF CRIMINAL PROCEDURE 3.220, SUCH THAT RECEIPT OF SUCH RECORDS TRIGGERS A RECIPROCAL DISCOVERY OBLIGATION FOR THAT DEFENDANT?
Henderson, 708 So.2d at 645. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the affirmative and approve the decision on review.

MATERIAL FACTS AND PROCEEDINGS BELOW
In the proceeding below, the First District denied petitioner John Wesley Henderson's (Henderson) petition for writ of certiorari to quash the trial court's protective order, which ruled that Henderson's public records request to the sheriff's office triggered a reciprocal discovery obligation under Florida Rule of Criminal Procedure 3.220. The following facts are from the court's opinion:
Henderson and Tracy Adams have each been charged by separate indictment in separate criminal cases, for the premeditated murder in the first degree of one Lawrence Pinkard and grand theft of an unspecified amount of Pinkard's money. The State is seeking the death penalty, should Henderson be convicted. In Adams' criminal case, his counsel elected to participate in the discovery process under Florida Rule of Criminal Procedure 3.220, and therefore full disclosure has been made to him. In Henderson's criminal case, however, his counsel has thus far, chosen not to participate in discovery nor obtain materials from Adam's counsel. Instead, Henderson's counsel obtained from the State exculpatory material pursuant to Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], as well as other information from the court file. However, counsel for Henderson also sent a letter to the local sheriff requesting, pursuant to Chapter 119, Florida Statutes, (Public Records Act), copies of all reports relating to the death of Pinkard, and/or the subsequent arrest of Henderson and Adams. The letter was on the law firm's letterhead, but did not mention the criminal case number or indicate that counsel was appointed to represent Henderson in the pending *321 prosecution. It is this letter which is the subject of the petition.
Before disclosing such documents, the assistant state attorney, having learned of the request to the sheriff, immediately filed a motion for protective order in Henderson's criminal case to prevent the sheriff from disclosing such information. A hearing took place within hours thereafter, and the assistant state attorney argued that Henderson was attempting to do indirectly, what he could not do by direct means without incurring a reciprocal discovery obligation in his criminal case. The State requested an order preventing disclosure and declaring such letter to constitute participation in a discovery process under rule 3.220.
The trial court agreed, explaining that had Henderson sought the records directly related to his pending criminal case from either the co-perpetrator, Adams, or by demand to the State, the reciprocal discovery obligation would have automatically been triggered. The court found that the public records request by Henderson's counsel to the sheriff is no different than requesting such documents under the discovery rules, and therefore ruled that the public records request constituted participating in such discovery, thereby triggering a reciprocal discovery obligation for Henderson under rule 3.220. Recognizing the novelty of this issue and substantial impact on similarly situated criminal defendants, the court certified this issue as one of great public importance. The documents were allowed to be produced to the court under seal and Henderson's trial has been continued, pending outcome of this appeal.
Henderson, 708 So.2d at 642-43 (footnote omitted).
On appeal, the First District utilized a strict statutory interpretation in finding that section 119.07(8), Florida Statutes (Supp.1996) precludes expanding a criminal defendant's rights to discover public records pertaining to his or her pending criminal prosecution beyond the parameters provided for under rule 3.220. In reasoning that "a criminal defendant cannot utilize the Public Records Act to gain access to records related to that defendant's case to which the defendant could not otherwise gain access pursuant to rule 3.220, without triggering a reciprocal discovery obligation," Henderson, 708 So.2d at 644, the court relied on the following statutory language: "The provisions of this section are not intended to expand or limit the provisions of Rule 3.220, Florida Rules of Criminal Procedure, regarding the right and extent of discovery by the state or by a defendant in a criminal prosecution. ..." § 119.07(8), Fla. Stat. The First District construed section 119.07(8) as "essentially abrogat[ing] a criminal defendant's ability to use the Public Records Act as an endrun around the reciprocity which has been required since 1989 under rule 3.220." 708 So.2d at 644.
Finally, the First District rejected Henderson's argument that "the mere fact that co-perpetrator Adams has participated in discovery, changes or eliminates Henderson's obligations under rule 3.220." Id. On the contrary, the court explained that:
Instead, we read section 119.011(3)(c)5 in a manner consistent with the apparent purpose behind section 119.07(8), to prevent a defendant from obtaining such nonexempt public records pertaining to his or her pending criminal prosecution, while sidestepping the discovery provisions under rule 3.220. Were we to do otherwise, one perpetrator would be unfairly disadvantaged simply because he or she participated in pre-trial discovery first, while others charged with the same crime could subsequently obtain the same records, but without any reciprocal discovery obligation. We do not believe the drafters of the Public Records Act intended such an absurd result.
Id. Nevertheless, while accordingly denying Henderson's petition for writ of certiorari, the First District certified the question *322 referred to above to this Court as one of great public importance. Id. at 645.

LAW AND ANALYSIS
This case concerns whether a criminal defendant's request of nonexempt public records pursuant to chapter 119, Florida Statutes, triggers the reciprocal discovery obligation contained in Florida Rule of Criminal Procedure 3.220(a). In the course of our inquiry, we will review the caselaw on this issue, examine the relevant statutes and rules, and explore what public agencies constitute "the State" for criminal discovery purposes. We will also briefly discuss the interaction between the federal analogue of Florida's public records statute, the Freedom of Information Act (FOIA),[1] and discovery in federal criminal proceedings.

Case Below
The nub of the First District's decision is that section 119.07(8) "essentially abrogates a criminal defendant's ability to use the Public Records Act as an end-run around the reciprocity which has been required since 1989 under rule 3.220." Henderson, 708 So.2d at 644. Central to this reasoning is the First District's reading of section 119.011(3)(c)5, Florida Statutes (Supp.1996), "in a manner consistent with the apparent purpose behind section 119.07(8)," the statute at issue in this case. Id. Section 119.011(3)(c)5 provides that "criminal intelligence information" and "criminal investigative information," which are normally exempted from disclosure under the Public Records Act, "shall not include ... [d]ocuments given or required by law or agency rule to be given to the person arrested. ..." In construing the two statutory provisions together, the First District determined that they "prevent a defendant from obtaining such nonexempt public records pertaining to his or her pending criminal prosecution, while sidestepping the discovery provisions under rule 3.220" 708 So.2d at 644. The court apparently felt that it had no recourse because:
Were we to do otherwise, one perpetrator would be unfairly disadvantaged simply because he or she participated in pre-trial discovery first, while others charged with the same crime could subsequently obtain the same records, but without any reciprocal discovery obligation. We do not believe the drafters of the Public Records act intended such an absurd result.
Id.

Cabral v. State
In Cabral v. State, 699 So.2d 294 (Fla. 5th DCA 1997), Carlo Cabral and Jason Thomas were indicted for first-degree murder. Thomas participated in discovery under rule 3.220 and received the State's file. Cabral then made a chapter 119 demand for the same file. Although the State complied, it requested that the trial court compel Cabral to submit to reciprocal discovery per rule 3.220. The trial court agreed and ordered Cabral to submit to reciprocal discovery.
On petition for writ of certiorari, Cabral argued that his public records requests were independent of criminal discovery under rule 3.220 and, therefore, because he proceeded under chapter 119, he should not incur a reciprocal discovery obligation. Id. at 295. The Fifth District denied Cabral's petition, reasoning that:
[B]ut for the release to the codefendant, the records would not have been available to Cabral under a public records request. We believe that the action of one defendant in requesting reciprocal discovery and a codefendant seeking the same records pursuant to chapter 119 is nothing less than "knowingly and purposely" sharing in the discovery obtained by a codefendant under the rule *323 and that the trial court was right in so determining.
Id. (citations omitted).

Wait v. Florida Power & Light Co.

In Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla.1979), the City of New Smyrna Beach Utilities Commission (New Smyrna) and Florida Power & Light (FPL) were engaged in litigation before the United States Nuclear Regulatory Commission over the construction and operation of FPL's nuclear power plants. FPL used the Florida Public Records Act to request New Smyrna's records relating to its electrical system. New Smyrna refused the request, after which FPL sought a writ of mandamus. The trial court granted the writ, ruling that the Public Records Act encompassed all records and documents in New Smyrna's possession. Id. at 422. The First District affirmed this ruling on appeal.
Among several claims raised on review, New Smyrna argued that section 119.07(1) should be interpreted as requiring reciprocal disclosure by FPL. Id. at 425. The cited statutory language provided as follows:
Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under supervision by the custodian of the records or his designee.
Section 119.07(1), Fla. Stat. (1975). We rejected that strained argument out of hand, writing that:
We find no merit in New Smyrna's argument because we do not equate the acquisition of public documents under chapter 119 with the rights of discovery afforded a litigant by judicially-created rules of procedure and because we simply cannot construe the language of section 119.07(1) in the fashion suggested by New Smyrna. That portion of the statute relied upon by New Smyrna provides that examination of public records shall be permitted "at reasonable times, under reasonable conditions, and under supervision by the custodian of the records or his designee." It is clear to us that this statutory phrase refers not to conditions which must be fulfilled before review is permitted but to reasonable regulations that would permit the custodian of the records to protect them from alteration, damage, or destruction and also to ensure that the person reviewing the records is not subjected to physical constraints designed to preclude review.
Wait, 372 So.2d at 425.

Agency Theory
The agency theory advanced by the State has some compelling logic to it. Florida courts have uniformly held that prosecutors are imputed with "constructive knowledge and possession of evidence" held by other departments of the executive branch of Florida's government for discovery purposes and therefore can be sanctioned for discovery violations. See Jones v. State, 709 So.2d 512, 520 (Fla.1998); Gorham v. State, 597 So.2d 782 (Fla.1992); Antone v. State, 355 So.2d 777 (Fla.1978); McArthur v. State, 671 So.2d 867, 869 n. 2 (Fla. 4th DCA 1996) (citing Gorham for proposition that the State "is charged with constructive possession of all information and evidence in the hands of the its agents, including police officers"); Lee v. State, 538 So.2d 63 (Fla. 2d DCA 1989); State v. Del Gaudio, 445 So.2d 605 (Fla. 3d DCA 1984).[2] Consequently, as a general rule, "information within the possession of the police is considered to be in possession of the prosecution." State v. Alfonso, 478 So.2d 1119, 1121 (Fla. 4th DCA 1985).
With that being so, it appears incongruous not to consider a law enforcement agency as the agent of the prosecution, "the State," for purposes of a criminal *324 defendant's public records request. Henderson essentially claims that he should be treated the same as any other disinterested Florida citizen seeking public information from the State. However, Henderson certainly has more of a vested interest in law enforcement documents than the average Floridian. Considering that the State is burdened by its association with law enforcement agencies and any other executive agency for discovery violations, logically then it should benefit by that presumed relationship in the public records context.

Chapter 119 and Florida Criminal Discovery
As recently explained by the Fourth District, "[t]he general purpose of the Public Records Act (Chapter 119, Florida Statutes (1995)), is to open public records to allow Florida's citizens to discover the actions of their government." Christy v. Palm Beach County Sheriff's Office, 698 So.2d 1365, 1366 (Fla. 4th DCA 1997) (citing City of Riviera Beach v. Barfield, 642 So.2d 1135, 1136 (Fla. 4th DCA 1994)). To foster that purpose, the Act should be "construed liberally in favor of openness." Barfield, 642 So.2d at 1136. In a similar vein, the purpose of Florida's criminal discovery rules "is to avail the defense of evidence known to the state so that convictions will not be obtained by the suppression of evidence favorable to a defendant or by surprise tactics in the courtroom." State v. Tascarella, 580 So.2d 154, 156 (Fla.1991); accord Post-Newsweek Stations, Florida Inc. v. Doe, 612 So.2d 549, 553 (Fla.1992) (reaffirming purposes of criminal discovery as narrowing issues, ascertaining relevant facts, and providing information to both parties so as to "avoid surprise tactics in the courtroom").
Rule 3.220(a) was added to the Florida Rules of Criminal Procedure in 1989. In re Amendment to Florida Rule of Criminal Procedure 3.220 (Discovery), 550 So.2d 1097 (Fla.1989). The new subdivision was included "to insure that if a defendant utilizes the discovery process, he or she will be required to reciprocate fully in discovery with the prosecution." Id. at 1098. The comments to the amendment explain, in pertinent part, that:
The purpose of this change is to ensure reciprocity of discovery. Under the previous rule, the defendant could tailor discovery, demanding only certain items of discovery with no requirement to reciprocate items other than those demanded. A defendant could avoid reciprocal discovery by taking depositions, thereby learning of witnesses through the deposition process, and then deposing those witnesses without filing a demand for discovery. With this change, once a defendant opts to use any discovery device, the defendant is required to produce all items designated under the discovery rule, whether or not the defendant has specifically requested production of those items.
550 So.2d at 1104-05. While these comments are not a formal part of rule 3.220, id. at 1099, they indicate the general thrust of this amendment to the criminal discovery rules.

FOIA and Federal Criminal Discovery
Federal Rule of Criminal Procedure 16 regulates discovery in federal criminal proceedings. A federal criminal defendant who elects to participate in discovery[3] incurs a reciprocal discovery obligation. Fed.R.Crim.P. 16(b)(1). For its part, FOIA represents "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 494, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). At the same time, numerous federal courts have made clear *325 that "FOIA is not intended ... to serve as a substitute for criminal discovery, which is governed by [Federal Rule of Criminal Procedure] 16." 9 Lawyers Cooperative Publishing, Federal Procedure § 22:1090 (Thomas R. Trenker et al., eds.1993) (citation omitted); Fruehauf Corp. v. Thornton, 507 F.2d 1253, 1254 (6th Cir.1974). The same holds true for civil litigation. See, e.g., Metex Corp. v. ACS Industries, Inc., 748 F.2d 150, 155 (3d Cir.1984) (observing that "FOIA ... is a public disclosure statute and is not intended to replace or supplement the discovery of private litigants") (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)).
The federal case most directly on point is United States v. Murdock, 548 F.2d 599 (5th Cir.1977). There, the defendant was convicted of willfully failing to file federal income tax returns for three years. Although admitting the failure to file tax returns, the defendant moved to quash the indictment on grounds of selective and discriminatory prosecution. In conjunction with his motion, Murdock requested discovery of numerous government documents. The trial court allowed Murdock to see some of the requested documents but denied access to other material. Id. at 600. The Fifth Circuit affirmed on appeal.
While recognizing that FOIA's purpose was "to provide greater public access to records of the Government agencies," id. at 601, the court found nothing in the Act's text or its legislative history to support the proposition that it was intended to enlarge the scope of discovery under the Federal Rules of Criminal Procedure. Id. The court reasoned that "[s]ince Congress has the power to regulate the practice and procedures in the federal courts, had Congress intended to amend the explicit discovery procedures set forth in Rule 16 by enactment of the FOIA, it undoubtedly could have done so." Id. at 602 (citations omitted). Accordingly, the Fifth Circuit held that the discovery provisions of rule 16 and FOIA "provide two independent schemes for obtaining information through the judicial process." Id. Although conceding that government information obtained through FOIA "may be useful in a criminal trial," id.,[4] the court ultimately determined that "FOIA was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure." Id.

This Case
We now address the specific issue raised in the certified question. At the outset, Henderson's argument makes a lot of sense if viewed in isolation. He, like any other Florida citizen, has a right of access to any nonexempt state document.[5] This right does not dissolve just because he has been indicted for allegedly committing several crimes. Further, Henderson has scrupulously avoided using rule 3.220's formal discovery provisions and has so stated in several communications. In that manner, he has imaginatively used the various sources of public information and private investigatory techniques to prepare his defense.
Our dicta[6] in Wait"we do not equate the acquisition of public documents under *326 chapter 119 with the rights of discovery afforded a litigant by judicially-created rules of procedure," 372 So.2d at 425also arguably supports Henderson's argument at first glance. However, Wait concerned a Florida public records request in the backdrop of litigation before a federal regulatory agency. Here, Henderson's public records request for criminal investigative and intelligence information from a Florida law enforcement agency occurs amidst his pending criminal prosecution by a Florida state attorney. Further, under the unique facts of this case, Henderson could not acquire "public" documents under chapter 119 if not for the fact that his co-defendant exercised his "right[] of discovery afforded a litigant by judicially-created rules of procedure." Had his codefendant not exercised those rights, the documents Henderson requested would not be "public" and thus would be unobtainable. We simply cannot ignore that dynamic.
Moreover, the statute under which Henderson makes his public records requestsection 119.07(8)apparently contemplates such instances and expresses the legislative intent regarding its interplay with rule 3.220. Clearly, the legislature had some purpose in mind when it enacted section 119.07(8).[7]See Beach v. Great Western Bank, 692 So.2d 146, 152 (Fla.1997) (reciting this Court's long-held "assumption that legislatures do not enact purposeless and therefore useless, legislation") (citation omitted) aff'd sub nom. Beach v. Ocwen Fed. Bank, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). Therefore, Henderson's public records request can be viewed alternatively as either expanding his right and extent of discovery or limiting the State's right and extent of discovery. Under either interpretation, the statutory provision would appear to foreclose his approach. While Henderson is certainly correct that chapter 119 grants a substantive right to Florida citizens, the legislature also has the prerogative to place reasonable restrictions on that right. See Henderson, 708 So.2d at 644. In the final analysis, none of these elements were present in Wait. Accordingly, we conclude that Wait does not control our disposition in this case.
With that said, Henderson's savvy pretrial discovery methodology is all predicated on (now) nonexempt "criminal intelligence" or "criminal investigative" information. Section 119.07(3)(b), Florida Statutes (1995) provides that "[a]ctive criminal intelligence information and active criminal investigative information are exempt from the provisions of subsection (1) and s. 24(a), Art. I of the State Constitution." Consequently, but for codefendant Adams' participation in discovery, the requested documents would have remained privileged under section 119.07(3)(b), and Henderson's standing as a Florida citizen is of no moment in gaining access to such information.
In that situation, only if Henderson acts in his capacity as the "person arrested" under section 119.011(3)(c)5[8] and participates *327 in discovery will he have access to the requested information. In short, the nexus between the codefendants[9] is the essential element in this case and cannot be ignored as if Henderson were simply a disinterested third party seeking more information about the criminal justice process. In the end, that fact is the fatal flaw in Henderson's argument. Because this situation can only arise when multiple defendants are involved, we find that the First District pegged the issue squarely when it concluded:
Were we to [allow a codefendant to escape a reciprocal discovery obligation], one perpetrator would be unfairly disadvantaged simply because he or she participated in pre-trial discovery first, while others charged with the same crime could subsequently obtain the same records, but without any reciprocal discovery obligation. We do not believe the drafters of the Public Records Act intended such an absurd result.
Henderson, 708 So.2d at 644.
Further, under the plain language of rule 3.220(a)"[i]f any defendant knowingly or purposely shares in discovery obtained by a co-defendant, the defendant shall be deemed to have elected to participate in discovery"Henderson may reasonably be deemed to have "share[d]" in Adams' discovery materials because he seeks access to many of the same documents, albeit by a different channel. See Cabral, 699 So.2d at 295. Henderson is, in essence, "sharing" the fruits of Adams' discovery because he would not have recourse to such a channel of information without Adams' predicate: his participation in discovery. Therefore, it is conceptually impossible to divorce these two actions from each other. Henderson's public records request would be properly denied without Adams' precursor action. § 119.07(3)(b), Fla. Stat. (1995).
Finally, sua sponte we amend rule 3.220(a) to make account for the issue raised in this case. As amended today, the rule reads as follows:
(a) Notice of Discovery. After the filing of the charging document, a defendant may elect to participate in the discovery process provided by these rules, including the taking of discovery depositions, by filing with the court and serving on the prosecuting attorney a "Notice of Discovery" which shall bind both the prosecution and defendant to all discovery procedures contained in these rules. Participation by a defendant in the discovery process, including the taking of any deposition by a defendant or the filing of a public records request under chapter 119, Florida Statutes for nonexempt law enforcement records relating to the defendant's pending prosecution, shall be an election to participate in discovery and triggers a reciprocal discovery obligation for the defendant. If any defendant knowingly or purposely shares in discovery obtained by a codefendant, the defendant shall be deemed to have elected to participate in discovery.
The rule's added language is indicated by underscoring. This amendment shall become effective immediately. Because of this substantial change to the rule by this Court, we direct that the amended rule be advertised in The Florida Bar News; we direct that the Criminal Procedure Rules Committee of the The Florida Bar review the rule for comment; and we direct that all interested persons submit comments *328 regarding the rule within sixty days of publication.

Conclusion
In summary, we answer the certified question in the affirmative, approve the decision on review, and amend Florida Rule of Criminal Procedure 3.220(a) as detailed above.
It is so ordered.
HARDING, C.J., SHAW and WELLS, JJ., and OVERTON, Senior Justice, concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE, J., concurs.
ANSTEAD, J., concurring in part and dissenting in part.
I concur with the majority that this case demonstrates the need for an amendment to the criminal rules of discovery and I concur in the adoption of the amendment set out in the majority opinion. Under the amendment future defendants will not be able to take advantage of the unique circumstances presented here without knowingly consenting to reciprocal discovery. I would not, however, retroactively apply the new amendment to this defendant despite the seeming benefit he has gained because of the unique circumstances of this case. The defendant here has neither had his discovery rights enlarged nor voluntarily subjected himself to the reciprocal discovery rules. Rather, as the majority acknowledges, "He, like any other Florida citizen, has a right of access to any nonexempt state document." Majority op. at 325.
PARIENTE, J., concurs.
NOTES
[1] 5 U.S.C. § 552 (1994).
[2] Other jurisdictions have similarly imputed such knowledge to prosecutors. See, e.g., Jimenez v. State, 112 Nev. 610, 918 P.2d 687, 693 (1996) (adopting the rule in Gorham).
[3] E.g., requesting relevant books, papers, documents, photographs, or tangible objects. Fed.R.Crim.P. 16(a)(1).
[4] At least one commentator believes that no criminal defense lawyer should go to trial without utilizing FOIA, or the state rendition thereof, for obtaining "useful" information. See John J. Watkins, Using the Freedom of Information Act as a Discovery Device, 1994 Ark. L. Notes 59, 64-66 (1994). On the civil side, another author recommends that private practitioners use Florida's Public Records Act as a discovery device in litigation versus the State. Robert D. Peltz, Use of the Florida Public Records Act as a Discovery Tool in Tort and Administrative Litigation Against the State, 39 U. Miami L.Rev. 291 (1985).
[5] In interpreting article I, section 24 of the Florida Constitution, we have stated that "public officials must conduct public business in the open and ... public records must be made available to all members of the public." State ex rel. Clayton v. Board of Regents, 635 So.2d 937, 938 (Fla.1994).
[6] The core holding in Wait is that "in enacting section 119.07(2), Florida Statutes (1975), the legislature intended to exempt those public records made confidential by statutory law and not those documents which are confidential or privileged only as a result of the judicially created privileges of attorney-client and work product." 372 So.2d at 424. Consequently, "[i]f the common law privileges are to be included as exemptions, it is up to the legislature, and not this Court, to amend the statute." Id.
[7] Section 119.07(8), Florida Statutes (Supp. 1996), provides in pertinent part:

The provisions of this section are not intended to expand or limit the provisions of Rule 3.220, Florida Rules of Criminal Procedure, regarding the right and extent of discovery by the state or by a defendant in a criminal prosecution or in collateral postconviction proceedings.
[8] Section 119.011(3)(c)(5) provides, in pertinent part, that:

"Criminal intelligence information" and "criminal investigative information" shall not include: Documents given or required by law or agency rule to be given to the person arrested. ...
In other words, a criminal defendant has access to this information if he or she is due such material under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or participates in discovery.
[9] Whether Henderson and Adams are technically "codefendants" is immaterial in this context. Although being tried separately, both prosecutions center on the same underlying crimes and facts. That the two allegedly acted in concert does not appear to be in dispute. Therefore, the same public records are involved in both prosecutions. See Henderson, 708 So.2d at 643 (noting that Henderson's counsel requested that the sheriff provide copies of all reports relating to the victim's death "and/or the subsequent arrest of Henderson and Adams") (emphasis added).