# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-3951
_____

EXECUTIVE OFFICE OF THE
GOVERNOR,

    Appellant,

    v.

AHF MCO OF FLORIDA, INC.
d/b/a PHC FLORIDA HIV/AIDS
SPECIALTY PLAN,

    Appellee.

_____


On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

October 29, 2018


PER CURIAM.

Appellant, the Executive Office of the Governor, appeals the trial court's order granting mandamus relief to Appellee, AHF MCO of Florida, Inc. d/b/a PHC Florida HIV/AIDS Specialty Plan, requiring Appellant to produce the public records Appellee had requested. We reverse and remand for further proceedings.

On July 19, 2018, Appellee submitted a public records request to Appellant, seeking the production of the following records: (1) "[a] copy of Governor Scott's electronic calendar showing all meetings, events, and appearances involving the Governor for the

period July 20, 2018 through October 31, 2018"; (2) "[a] copy of any hardcopy calendars or other documents showing all meetings, events, and appearances involving the Governor for the period July 20, 2018 through October 31, 2018"; (3) "[a]ll documents and records that indicate where Governor Scott will travel during the period July 20, 2018 through October 31, 2018"; (4) "[a]ll documents and records that indicate where Governor Scott will reside during the period July 20, 2018 through October 31, 2018"; and (5) "[a] list of all campaign and fundraising events Governor Scott will attend as part of his campaign for U.S. Senate during the period July 20, 2018 through October 31, 2018." In its response to the public records request, Appellant asserted that it would not produce the records because they are exempt under section 119.071(2)(d), Florida Statutes (2018).

Pursuant to Appellee's ensuing petition for writ of mandamus and the trial court's order to show cause, Appellant filed a response asserting as it does on appeal that the requested information is exempt from disclosure under section 119.071(2)(d)—which exempts "[a]ny information revealing surveillance techniques or procedures or personnel"—because the premature disclosure of prospective information regarding the Governor's detailed schedule and travel plans would reveal surveillance techniques, procedures, or personnel and would jeopardize his security. In addition, Appellant asserted below that Appellee's request (5) does not relate to public records. In support of its argument, Appellant attached to its response the affidavit of a special agent with the Florida Department of Law Enforcement ("FDLE"), who attested that it is the statutory duty of FDLE to provide for the safety of the Governor and that "[p]remature disclosure of prospective information regarding the Governor's detailed schedule, including drive times, and the time and location of the Governor's arrival and departure, would reveal FDLE's surveillance techniques, procedures, and personnel and would compromise" the security of the Governor, as well as the security of law enforcement officers whose job is to protect him.

Following an accelerated hearing where the agent's affidavit was undisputed, and without inspecting the records at issue, the trial court entered an Order on Public Records Request, in which it granted mandamus relief and ordered Appellant to produce the

2

requested public records within ten days upon finding that the requested information does not reveal surveillance techniques, procedures, or personnel or pertain to agency investigation. This expedited appeal followed.

As we have repeatedly stated, "an in-camera inspection is 'generally the only way for a trial court to determine whether or not a claim of exemption applies.'" *See, e. g., Envtl. Turf, Inc. v. Univ. of Fla. Bd. of Trs.*, 83 So. 3d 1012, 1013 (Fla. 1st DCA 2012) (reversing in part the trial court's denial of a public records request based on its determination without inspection of the records that the asserted exemptions applied and remanding for an in-camera inspection to determine if the records were exempt from disclosure under the alleged exemptions) (citation omitted); *Holley v. Bradford Cty. Sheriff's Dep't*, 171 So. 3d 805, 805 (Fla. 1st DCA 2015) (similar); *Garrison v. Bailey*, 4 So. 3d 683 (Fla. 1st DCA 2009) (similar); *see also Lopez v. Singletary*, 634 So. 2d 1054, 1058 (Fla. 1993) (reaffirming that "it is for a judge to determine, in an in camera inspection, whether particular documents must be disclosed").

Here, the trial court granted Appellee's request for disclosure of public records without inspecting the records, despite the special agent's undisputed attestation that the "[p]remature disclosure of prospective information regarding the Governor's detailed schedule, including drive times, and the time and location of the Governor's arrival and departure, would reveal FDLE's surveillance techniques, procedures, and personnel" and would jeopardize the security of the Governor and the officers whose duty is to protect him. Appellee's requests in (3) and (4) for "[a]ll documents and records that indicate" where the Governor will travel and reside are broad and to the extent they seek information encompassed by the agent's affidavit, such as drive times and arrival and departure times, such information is exempt from disclosure. As to other types of information not referenced in the agent's affidavit, Appellant shall produce any public records requested in (3) and (4)—in addition to any public records requested in (1), (2), and (5)—for an in-camera inspection, and the trial court shall determine if the records and/or entries contained therein are exempt from disclosure under the Public Records Act.

REVERSED and REMANDED.

LEWIS and JAY, JJ., concur; ROWE, J., specially concurs with opinion.

—————————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

—————————————————

ROWE, J., specially concurring.

I concur in the majority opinion, but write separately to explain why AHF's request for records relating to the Governor's calendar and travel records necessarily reveals information that could compromise the ability of the Governor's security detail to surveil for threats against the Governor and why those records are not subject to disclosure under the Public Records Act.

AHF requested the following records related to the Governor's calendar and travel plans:

(1) A copy of Governor Scott's electronic calendar showing all meetings, events, and appearances involving the Governor for the period July 20, 2018 through October 31, 2018;

(2) A copy of any hardcopy calendars or other documents showing all meetings, events, and appearances involving the Governor for the period July 20, 2018 through October 31, 2018;

(3) All documents and records that indicate where Governor Scott will travel during the period July 20, 2018 through October 31, 2018;

(4) All documents and records that indicate where Governor Scott will reside during the period July 20, 2018 through October 31, 2018; and

4

(5) A list of all campaign and fundraising events Governor Scott will attend as part of his campaign for U.S. Senate during the period July 20, 2018 through October 31, 2018.

In response to AHF's requests, the Executive Office of the Governor (EOG) asserted that the records requested in (1)-(4) were exempt from disclosure pursuant to section 119.071(2)(d), Florida Statutes (2018), because they contained "information revealing surveillance techniques or procedures or personnel." As to request (5), the EOG asserted that the Governor's campaign schedule and campaign fundraising schedule were unrelated to the transaction of official state business and therefore were not public records. *See Butler v. City of Hallandale Beach*, 68 So. 3d 278 (Fla. 4th DCA 2011).

After AHF petitioned for mandamus relief, the trial court issued an order to show cause to the EOG. In response, the EOG argued that the records requested were exempt from disclosure pursuant to section 119.071(2)(d). Attached to the EOG's response was a sworn affidavit from Darrick Waller, Assistant Special Agent In Charge of the Florida Department of Law Enforcement (FDLE). Waller has served in the Protective Operations Section of FDLE (security detail) for over twelve years, during the administrations of multiple governors. Waller attested that disclosure of the records requested by AHF could reveal surveillance techniques, procedures, and the identity of law enforcement officers, which would "compromise the safety and security of the Governor." The trial court, without conducting an in camera inspection, determined that the records requested by AHF did not reveal any information exempt from disclosure under the Public Records Act, concluding instead that "[i]t simply [was] information regarding the Governor's travel schedule." This oversimplification by the trial court ignores not only the scope of AHF's request, but also that the schedule and travel plans of the Governor's security detail are in lockstep with the Governor's movements.

The Florida Constitution and the Public Records Act grant to the people the right to inspect and copy public records, however, "the legislature also has the prerogative to place reasonable restrictions on that right." *Henderson v. State*, 745 So. 2d 319, 326

5

(Fla. 1999). The Legislature established such restrictions for agency investigations, specifically making exempt from disclosure "any information revealing surveillance techniques or procedures or personnel." § 119.071(2)(d), Fla. Stat. (2018). This exemption is not limited to records containing written descriptions of surveillance techniques, procedures, and personnel identifications. Rather, it exempts from disclosure "*[a]ny information revealing* the surveillance techniques or procedures or personnel" of the FDLE, the Capitol Police, and the Governor's security detail. *See* §§ 119.071(2)(d), 119.011(2), Fla. Stat. (2018) (emphasis added). Thus, the plain language of section 119.071(2)(d) reflects the Legislature's intent to exempt from disclosure any information by which a person could ascertain law enforcement surveillance techniques, procedures, and the identity of law enforcement personnel. *See generally Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.").

AHF's requests call for the EOG to produce records that reveal surveillance techniques, procedures, and the identity of law enforcement personnel, including members of the Governor's security detail. The records reflecting the Governor's calendar and schedule reveal not only his movements, but also the movements of his security detail. The Governor's security detail accompanies him at events in, around, outside of the Capitol, and wherever the Governor travels. The synchronized movement of the Governor and his security detail is expressly provided for by statute. The Legislature has enacted a number of laws to maintain the security of the Governor, the Governor's immediate family, and the Governor's office and mansion. § 943.68, Fla. Stat. (2018). Members of the security detail are authorized to provide for the Governor's transportation, coordinate safety and security efforts with other law enforcement agencies, bear arms and make arrests (with or without a warrant), and employ the personnel necessary to carry out these duties. §§ 943.68(2), (3), (7), Fla. Stat. (2018). The Capitol Police and the Governor's security detail also respond to all complaints relating to criminal activity or security threats against the Governor. §§ 943.61(4)(g), 943.68, Fla. Stat. (2018).

6

Indeed, the core mission of the Governor's security detail is to keep a close watch over the Governor. That is the very definition of "surveillance." *Surveillance*, Merriam-Webster, https://www.merriam-webster.com/dictionary/surveillance (last visited Oct. 19, 2018) ("close watch kept over someone or something"). The affidavit of Waller explains how AHF's requests for the Governor's schedule and travel records inevitably call for documents revealing surveillance techniques, procedures, and identities of those keeping a close watch over him. Waller attested that the duties of the security detail include "advance work, threat assessments, threat response planning, emergency evacuation planning, and sheltering arrangements." Waller averred that the calendar and travel records requested by AHF include highly sensitive information, such as drive times, the time and location of the Governor's arrival and departure, and that premature disclosure of this information would compromise the security detail's statutory duty to maintain the Governor's security and to guard against potential threats.[*]

In addition to the Waller affidavit, AHF introduced a number of exhibits (copies of calendars and scheduling documents produced by the Governor in the past to AHF) that reveal the surveillance techniques, procedures, and the identity of FDLE agents. Those exhibits include: (1) records of daily emails containing the Governor's schedule and revealing the identity of FDLE agents; (2) the Governor's line-by-line personal schedules reflecting that the security detail transports the Governor to and from each event, whether the transportation involves a five-minute drive or air travel; (3) records identifying private aircraft used by the Governor and his security detail; and (4) calendars

---

[*] It is undisputed that the EOG releases the Governor's schedule on a daily basis. Although AHF repeatedly referred to this practice to support its argument that the requested records should not be exempt, the Governor's decision to release records on a schedule of his choosing does not waive his ability to assert the exemption prospectively. As a person entitled to assert the exemption under the statute, the Governor may assert or voluntarily waive the exemption.

7

reflecting that the security detail accompanies the Governor to the airport, private residences, the Capitol, and where the Governor sleeps at night.

Based on the undisputed record before this Court, AHF has requested records that include information revealing surveillance techniques, procedures, and the identities of law enforcement officers. Compelled disclosure of these highly sensitive records not only compromises law enforcement information made exempt under the Public Records Act, it also compromises the statutory mandate of the security detail to provide for and maintain the security of the Governor. For these reasons, I join the majority in holding that the trial court erred in concluding that the records were not exempt under section 119.071(2)(d) and compelling the EOG to produce public records responsive to AHF's request. On remand, the trial court should carefully inspect the public records produced by the EOG to determine whether any of those records reveal any information about surveillance techniques, procedures, or law enforcement personnel. The trial court should also consider testimony and evidence submitted by the parties before determining whether the public records, or portions thereof, may be exempt under section 119.071(2)(d).

––––––––––––––––––––––––––––

Barry Richard and M. Hope Keating of Greenberg Traurig, P.A., Tallahassee, for Appellant.

Steven R. Andrews, Brian O. Finnerty, and Ryan J. Andrews of The Law Offices of Steven R. Andrews, P.A., Tallahassee, for Appellee.